JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
HARRY S. YIM

FILED
07 OCT 30 AM 10: 33
CLERK US DISTRICT SAN DIEGO
SOUTHERN DISTRICT OF CALIFORNIA

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

'07 CV 2065 IEG (AJB)

(c) Attorney's (Firm Name, Address, and Telephone Number)
John B. Bulgozdy, Securities and Exchange Commission, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, CA 90036 (323) 965-3998

Attorneys (If Known)
David W. Wiechert, 107 Avenida Miramar, Suite A, San Diego, CA 92672 (949) 361-2822

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 77q(a) and 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5
Brief description of cause:
The Complaint alleges violations of the federal securities laws

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE October 30, 2007
SIGNATURE OF ATTORNEY OF RECORD John B. Bulgozdy

**FOR OFFICE USE ONLY**

RECEIPT # ____   AMOUNT ____   APPLYING IFP ____   JUDGE ____   MAG. JUDGE ____

```
JOHN B. BULGOZDY, Cal. Bar No. 219897
Email: bulgozdyj@sec.gov
FINOLA H. MANVELIAN, Cal. Bar No. 180681
Email: manvelianf@sec.gov
LORRAINE B. ECHAVARRIA, Cal. Bar No. 191860
E-mail: echavarrial@sec.gov
WILLIAM G. BERRY, Cal. Bar No. 206348
E-mail: berryw@sec.gov
```

**ORIGINAL FILED**
07 OCT 30  AM 10: 35
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Acting Regional Director
Michele Wein Layne, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>HARRY S. YIM,<br><br>Defendant. | Case No. '07 CV 2065 IEG (AJB)<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b) & 77v(a), and Sections 21(d)(1), 21(e), 21A(a)(1)(A), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(e), 78u-1(a)(1)(A), & 78aa. Defendant has, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities

1 | of a national securities exchange in connection with the transactions, acts,
2 | practices, and courses of business alleged in this complaint.
3 |         2.      Venue is proper in this district pursuant to Section 22(a) of the
4 | Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C.
5 | § 78aa, because certain of the transactions, acts, practices, and courses of business
6 | constituting violations of the federal securities laws occurred within this district,
7 | and defendant resides within this district.

## SUMMARY

9 |         3.      This matter involves unlawful insider trading in the securities of
10 | Invitrogen Corporation ("Invitrogen") by defendant Harry S. Yim. Yim was a staff
11 | scientist for Invitrogen who sold all of the shares of Invitrogen stock he could on
12 | July 19, 2004 based on material, non-public information Yim learned during a July
13 | 7, 2004 company-wide, employee-only meeting. During the July 7, 2004 meeting,
14 | Invitrogen's chief executive officer announced negative news that "fully 60% of
15 | [Invitrogen's] business is shrinking. Shrinking." Immediately after the meeting,
16 | Yim unsuccessfully attempted to sell his Invitrogen stock, and he continued his
17 | efforts until, on July 19, 2004, Yim sold 1,603 shares of Invitrogen stock that he
18 | owned, and exercised options and sold an additional 4,728 shares. Yim completed
19 | his sales two days before Invitrogen's July 21, 2004 earnings release, which
20 | announced Invitrogen had lowered revenue projections for the remainder of the
21 | fiscal year. After the earnings release on July 21, Invitrogen's stock price declined
22 | by more than 20%, to $51.16, from the previous day's close of $66.15. Yim
23 | avoided losses of approximately $79,581 by selling his Invitrogen shares prior to
24 | the July 21 earnings release.
25 |         4.      By engaging in the conduct described in this Complaint, Yim violated
26 | the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a),
27 | and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5
28 | thereunder, 17 C.F.R. § 240.10b-5.

5.  The Commission requests an order permanently enjoining Yim against future violations of the federal securities laws, requiring Yim to disgorge his loss avoided of approximately $79,581 and prejudgment interest thereon, and imposing a civil penalty.

## THE DEFENDANT

7.  Harry S. Yim, 45, is a resident of Vista, California. Yim was employed by Invitrogen from May 1998 through July 2006. Yim began his employment as a research staff scientist, was promoted to manager in or around April 2003, and remained in that position until he was terminated in July 2006.

## RELATED ENTITY

8.  Invitrogen is a Delaware corporation headquartered in Carlsbad, California and has offices worldwide. Invitrogen provides products and services (such as gene cloning and expression technology) that support research institutions in academia, the government, and pharmaceutical and biotech companies in the United States and Europe. Invitrogen's common stock is registered with the Commission and is traded on the Nasdaq National Market under the symbol "IVGN."

## THE DEFENDANT'S FRAUDULENT CONDUCT

9.  As of July 7, 2004, Yim owned 1,603 shares of Invitrogen stock in his account at E*Trade, and had vested stock options on 4,728 shares.

10. On July 7, 2004, Invitrogen held a regularly scheduled meeting for all Invitrogen employees. The meeting was held in a conference room in Invitrogen's Carlsbad office, and all employees world-wide were invited to attend in person, by telephone conference, or by intranet. The meeting was only for Invitrogen employees, and was not open to the public. Yim attended this July 7, 2004 meeting in person.

11. At the beginning of the July 7, 2004 meeting, Invitrogen's chief executive officer ("CEO") made some introductory remarks about Invitrogen's

3

financial performance during the second quarter of 2004 and the remainder of the year. The CEO told employees that the company was not "quite finished grinding through all the numbers" for the second quarter and did not have final results it was going to make public to its shareowners. The CEO added, "[w]hat I can tell you for sure though is that the plan we set for ourselves internally was not met. We really missed it." The CEO reflected "about what is going on and perhaps what we have to do differently for the balance of the year. And I think it first starts with a fundamental kind of realization of a crisis" at the company. The CEO further stated: "I want you to understand a major problem this company has. Fully 60% of our business is shrinking. Shrinking. The bio-discovery business, on its entirety, is losing. That means competitors are beating us each and every day. . . . We've got to change. And it really hit us in the second quarter."

12. Immediately after attending the July 7, 2004 meeting, Yim placed orders with his E*Trade account to sell a total of 6,331 shares of Invitrogen stock at a price of approximately $75 per share. However, the price of Invitrogen stock did not reach $75 per share on July 7, 2004, so the orders were not executed and were automatically cancelled.

13. Yim regularly followed reported news reports concerning Invitrogen. On or around July 14, 2004, Yim read a July 14, 2004 news announcement from Invitrogen that it would release its second quarter 2004 earnings results on July 21, 2004.

14. On July 15, 2004, Yim again attempted to sell a total of 6,331 shares of Invitrogen at a price of approximately $75 per share through his E*Trade account. However, the price of Invitrogen stock did not reach the trigger price set by Yim, and the orders were again not executed and were automatically cancelled.

15. On July 19, 2004, Yim again placed orders to sell a total of 6,331 shares of Invitrogen stock. However, in order to make sure the orders were executed, he decided not to use the trigger price he had been using in his previous

4

attempts to sell the stock. As a result, on July 19, 2004, Yim sold 6,331 shares of Invitrogen stock at a price of $64.75 per share, consisting of 1,603 shares of Invitrogen stock that he owned and 4,728 shares he acquired and sold through the exercise of vested options. Yim realized total proceeds of approximately $409,932 from his July 19 trades.

16. On July 21, 2004, Invitrogen announced its second quarter earnings. Invitrogen's July 21, 2004 release reported that it was reaffirming "its earnings guidance for the year on slightly lower revenue projections."

17. Following the July 21, 2004 release, Invitrogen's stock price fell 22.66%, from $66.15 per share as of the close on July 20, 2004, to $51.16 per share as of the close of July 21, 2004. Trading volume on July 21, 2004, was approximately 14,942,100 shares, a 1,546% increase from the previous day's trading volume of approximately 1.3 million shares.

18. On July 19, 2004, Yim was a corporate insider of Invitrogen and made his sales on the basis of material non-public information in breach of his duty of trust and confidence to Invitrogen and its shareholders.

19. Yim acted with scienter. Yim knew, or was reckless in not knowing, that the information he learned during the July 7, 2004 meeting about Invitrogen's financial performance was material non-public information and that he owed a duty of trust and confidence to Invitrogen and its shareholders. In addition, Yim knew, or was reckless in not knowing, that he was trading on the basis of material non-public information when he sold all his Invitrogen stock on July 19, 2004.

20. During Yim's employment at Invitrogen, the company maintained a "handbook" or "protocol" that was regularly distributed to its employees, and that set forth a number of company policies, including Invitrogen's policy on insider trading. In or about January 1999, Yim signed a document acknowledging that he had received a copy of Invitrogen's insider trading policy and representing that he understood it was his responsibility to read and abide by that policy. Invitrogen's

5

insider trading policy provided, in part: **"Insider Trading" is Illegal."** (emphasis in original). The policy defined an "insider" as "ANYONE who has information about a particular company or has access to information about that company that is both 'material' (i.e., information that is likely to be considered important by an investor) and not available to the general public." The policy further stated: "An 'insider' is a person who, regardless of his or her position in the company, possesses, or has access to, material information concerning Invitrogen that has not been fully disclosed to the public." Invitrogen's insider trading policy also suggested that any employee with "any questions or doubts" about whether he or she can trade should contact "a competent, independent corporate securities lawyer" for advice, or ask Invitrogen's chief financial officer or general counsel. The information disclosed at the July 7, 2004 meeting included material non-public information.

21. Yim did not contact a competent, independent corporate securities counsel or Invitrogen's chief financial officer or general counsel before he tried to sell Invitrogen stock beginning on July 7, 2004 through July 19, 2004, when Yim completed the sale of Invitrogen stock. Yim also had no pre-existing need or plan to sell his Invitrogen stock beginning on July 7, 2004 through July 19, 2004, when he completed his sales.

### FIRST CLAIM FOR RELIEF
### FRAUD IN THE OFFER OR SALE OF SECURITIES
#### Violations of Section 17(a) of the Securities Act

22. The Commission realleges and incorporates by reference paragraphs 1 through 21 above.

23. Defendant Yim, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails:

   a. with scienter, employed devices, schemes or artifices to

6

1    defraud;
2    b.   obtained money or property by means of untrue statements of
3         material fact or by omitting to state a material fact necessary in
4         order to make the statements made, in the light of the
5         circumstances under which they were made, not misleading; or
6    c.   engaged in transactions, practices, or courses of business which
7         operated or would operate as a fraud or deceit upon the
8         purchaser.
9    24.  By engaging in the conduct described above, defendant Yim violated,
10   and unless restrained and enjoined will continue to violate, Section 17(a) of the
11   Securities Act, 15 U.S.C. § 77q(a).

## SECOND CLAIM FOR RELIEF
## FRAUD IN CONNECTION WITH THE
## PURCHASE OR SALE OF SECURITIES
### Violations of Section 10(b) of the Exchange Act
### and Rule 10b-5 Thereunder

17   25.  The Commission realleges and incorporates by reference paragraphs 1
18   through 21 above.
19   26.  Defendant Yim, by engaging in the conduct described above, directly
20   or indirectly, in connection with the purchase or sale of a security, by the use of
21   means or instrumentalities of interstate commerce, of the mails, or of the facilities
22   of a national securities exchange, with scienter:
23   a.   employed devices, schemes, or artifices to defraud;
24   b.   made untrue statements of a material fact or omitted to state a
25        material fact necessary in order to make the statements made,
26        in light of the circumstances under which they were made, not
27        misleading; or
28   c.   engaged in acts, practices or courses of business which operated

or would operate as a fraud or deceit upon other persons.

27. By engaging in the conduct described above, defendant Yim violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue a final judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining defendant Yim and his agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the final judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### II.

Order defendant Yim to disgorge all ill-gotten gains from his illegal conduct, including any losses avoided, together with prejudgment interest thereon.

### III.

Order defendant Yim to pay a civil penalty under Section 21A(a) of the Exchange Act, 15 U.S.C. § 78u-1(a).

### IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

//
//

**V.**

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: October 30, 2007

*John B. Bulgozdy*
John B. Bulgozdy
Attorney for Plaintiff
Securities and Exchange Commission