JOHN B. BULGOZDY, Cal. Bar No. 219897
Email: bulgozdyj@sec.gov
FINOLA H. MANVELIAN, Cal. Bar No. 180681
Email: manvelianf@sec.gov
LORRAINE B. ECHAVARRIA, Cal. Bar No. 191860
E-mail: echavarrial@sec.gov
WILLIAM G. BERRY, Cal. Bar No. 206348
E-mail: berryw@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Acting Regional Director
Michele Wein Layne, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone:   (323) 965-3998
Facsimile:    (323) 965-3908

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                     Plaintiff,<br><br>           v.<br><br>HARRY H. YIM,<br><br>                     Defendant. | Case No. 07-CV-2065 IEG (AJx)<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b) & 77v(a), and Sections 21(d)(1), 21(e), 21A(a)(1)(A), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(e), 78u-1(a)(1)(A), & 78aa.  Defendant has, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities

of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

2.    Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of business constituting violations of the federal securities laws occurred within this district, and defendant resides within this district.

## SUMMARY

3.    This matter involves unlawful insider trading in the securities of Invitrogen Corporation ("Invitrogen") by defendant Harry H. Yim.  Yim was a staff scientist for Invitrogen who sold all of the shares of Invitrogen stock he could on July 19, 2004 based on material, non-public information Yim learned during a July 7, 2004 company-wide, employee-only meeting.   During the July 7, 2004 meeting, Invitrogen's chief executive officer announced negative news that "fully 60% of [Invitrogen's] business is shrinking.  Shrinking."  Immediately after the meeting, Yim unsuccessfully attempted to sell his Invitrogen stock, and he continued his efforts until, on July 19, 2004, Yim sold 1,603 shares of Invitrogen stock that he owned, and exercised options and sold an additional 4,728 shares. Yim completed his sales two days before Invitrogen's July 21, 2004 earnings release, which announced Invitrogen had lowered revenue projections for the remainder of the fiscal year.  After the earnings release on July 21, Invitrogen's stock price declined by more than 20%, to $51.16, from the previous day's close of $66.15.  Yim avoided losses of approximately $79,581 by selling his Invitrogen shares prior to the July 21 earnings release.

4.    By engaging in the conduct described in this Complaint, Yim violated the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

5.    The Commission requests an order permanently enjoining Yim against future violations of the federal securities laws, requiring Yim to disgorge his loss avoided of approximately $79,581 and prejudgment interest thereon, and imposing a civil penalty.

## THE DEFENDANT

7.    Harry H. Yim, 45, is a resident of Vista, California.  Yim was employed by Invitrogen from May 1998 through July 2006.  Yim began his employment as a research staff scientist, was promoted to manager in or around April 2003, and remained in that position until he was terminated in July 2006.

## RELATED ENTITY

8.    Invitrogen is a Delaware corporation headquartered in Carlsbad, California and has offices worldwide.  Invitrogen provides products and services (such as gene cloning and expression technology) that support research institutions in academia, the government, and pharmaceutical and biotech companies in the United States and Europe.  Invitrogen's common stock is registered with the Commission and is traded on the Nasdaq National Market under the symbol "IVGN."

## THE DEFENDANT'S FRAUDULENT CONDUCT

9.    As of July 7, 2004, Yim owned 1,603 shares of Invitrogen stock in his account at E*Trade, and had vested stock options on 4,728 shares.

10.    On July 7, 2004, Invitrogen held a regularly scheduled meeting for all Invitrogen employees.  The meeting was held in a conference room in Invitrogen's Carlsbad office, and all employees world-wide were invited to attend in person, by telephone conference, or by intranet.  The meeting was only for Invitrogen employees, and was not open to the public.  Yim attended this July 7, 2004 meeting in person.

11.    At the beginning of the July 7, 2004 meeting, Invitrogen's chief executive officer ("CEO") made some introductory remarks about Invitrogen's

financial performance during the second quarter of 2004 and the remainder of the year.  The CEO told employees that the company was not "quite finished grinding through all the numbers" for the second quarter and did not have final results it was going to make public to its shareowners.  The CEO added, "[w]hat I can tell you for sure though is that the plan we set for ourselves internally was not met.  We really missed it."  The CEO reflected "about what is going on and perhaps what we have to do differently for the balance of the year.  And I think it first starts with a fundamental kind of realization of a crisis" at the company.  The CEO further stated:  "I want you to understand a major problem this company has.  Fully 60% of our business is shrinking.  Shrinking.  The bio-discovery business, on its entirety, is losing.  That means competitors are beating us each and every day. . . . We've got to change.  And it really hit us in the second quarter."

12.     Immediately after attending the July 7, 2004 meeting, Yim placed orders with his E*Trade account to sell a total of 6,331 shares of Invitrogen stock at a price of approximately $75 per share.  However, the price of Invitrogen stock did not reach $75 per share on July 7, 2004, so the orders were not executed and were automatically cancelled.

13.     Yim regularly followed reported news reports concerning Invitrogen.  On or around July 14, 2004, Yim read a July 14, 2004 news announcement from Invitrogen that it would release its second quarter 2004 earnings results on July 21, 2004.

14.     On July 15, 2004, Yim again attempted to sell a total of 6,331 shares of Invitrogen at a price of approximately $75 per share through his E*Trade account.  However, the price of Invitrogen stock did not reach the trigger price set by Yim, and the orders were again not executed and were automatically cancelled.

15.     On July 19, 2004, Yim again placed orders to sell a total of 6,331 shares of Invitrogen stock.  However, in order to make sure the orders were executed, he decided not to use the trigger price he had been using in his previous

4

16.    On July 21, 2004, Invitrogen announced its second quarter earnings. Invitrogen's July 21, 2004 release reported that it was reaffirming "its earnings guidance for the year on slightly lower revenue projections."

17.    Following the July 21, 2004 release, Invitrogen's stock price fell 22.66%, from $66.15 per share as of the close on July 20, 2004, to $51.16 per share as of the close of July 21, 2004.  Trading volume on July 21, 2004, was approximately 14,942,100 shares, approximately more than a ten-fold increase from the previous day's trading volume of approximately 1.3 million shares.

18.    On July 19, 2004, Yim was a corporate insider of Invitrogen and made his sales on the basis of material non-public information in breach of his duty of trust and confidence to Invitrogen and its shareholders.

19.    Yim acted with scienter.  Yim knew, or was reckless in not knowing, that the information he learned during the July 7, 2004 meeting about Invitrogen's financial performance was material non-public information and that he owed a duty of trust and confidence to Invitrogen and its shareholders.  In addition, Yim knew, or was reckless in not knowing, that he was trading on the basis of material non-public information when he sold all his Invitrogen stock on July 19, 2004.

20.    During Yim's employment at Invitrogen, the company maintained an "Insider Trading Policy."  In or about January 1999, Yim signed a document acknowledging that he had received a copy of Invitrogen's Insider Trading Policy and representing that he understood it was his responsibility to read and abide by that Policy.  Invitrogen's Insider Trading Policy provided, in part:  **"'Insider Trading'" is Illegal."** (emphasis in original).  The Policy defined an "insider" as

"ANYONE who has information about a particular company or has access to information about that company that is both 'material' (i.e., information that is likely to be considered important by an investor) and not available to the general public." The Policy further stated: "An 'insider' is a person who, regardless of his or her position in the company, possesses, or has access to, material information concerning Invitrogen that has not been fully disclosed to the public." Invitrogen's Insider Trading Policy also suggested that any employee with "any questions or doubts" about whether he or she can trade should contact "a competent, independent corporate securities lawyer" for advice, or ask Invitrogen's chief financial officer or general counsel. The information disclosed at the July 7, 2004 meeting included material non-public information.

21.    Yim did not contact a competent, independent corporate securities counsel or Invitrogen's chief financial officer or general counsel before he tried to sell Invitrogen stock beginning on July 7, 2004 through July 19, 2004, when Yim completed the sale of Invitrogen stock. Yim also had no pre-existing need or plan to sell his Invitrogen stock beginning on July 7, 2004 through July 19, 2004, when he completed his sales.

## FIRST CLAIM FOR RELIEF
### FRAUD IN THE OFFER OR SALE OF SECURITIES
### Violations of Section 17(a) of the Securities Act

22.    The Commission realleges and incorporates by reference paragraphs 1 through 21 above.

23.    Defendant Yim, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails:

        a.    with scienter, employed devices, schemes or artifices to
              defraud;

        b.    obtained money or property by means of untrue statements of

material fact or by omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c.    engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

24.    By engaging in the conduct described above, defendant Yim violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## SECOND CLAIM FOR RELIEF

### FRAUD IN CONNECTION WITH THE
### PURCHASE OR SALE OF SECURITIES
### Violations of Section 10(b) of the Exchange Act
### and Rule 10b-5 Thereunder

25.    The Commission realleges and incorporates by reference paragraphs 1 through 21 above.

26.    Defendant Yim, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

a.    employed devices, schemes, or artifices to defraud;

b.    made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c.    engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons.

27.    By engaging in the conduct described above, defendant Yim violated,

and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

### **I.**

Issue a final judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining defendant Yim and his agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the final judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### **II.**

Order defendant Yim to disgorge all ill-gotten gains from his illegal conduct, including any losses avoided, together with prejudgment interest thereon.

### **III.**

Order defendant Yim to pay a civil penalty under Section 21A(a) of the Exchange Act, 15 U.S.C. § 78u-1(a).

### **IV.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

//
//
//
//

**V.**

Grant such other and further relief as this Court may determine to be just and necessary.

DATED:  November 1, 2007                /s/ John B. Bulgozdy
                                        John B. Bulgozdy
                                        Attorney for Plaintiff
                                        Securities and Exchange Commission

1

## **PROOF OF SERVICE**

2

I am over the age of 18 years and not a party to this action.  My business address is:

3

U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036-3648.

4

5

Telephone No. (323) 965-3998; Facsimile No. (323) 965-3908.

6

On November 1, 2007, I caused to be delivered the document entitled **FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** upon the parties to this action addressed as stated on the attached service list:

7

8

[  ]     OFFICE MAIL:  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

9

10

[ X ]     PERSONAL DEPOSIT IN MAIL:  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

11

12

[  ]     EXPRESS U.S. MAIL:  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

13

14

[ ]     HAND DELIVERY:  I caused to be hand delivered each such envelope to the office of the addressee.

15

16

[  ]     FEDERAL EXPRESS :By placing in sealed envelope(s) designated by Federal Express with delivery fees paid or provided for, which I deposited in a facility regularly maintained by Federal Express or delivered to a Federal Express courier, at Los Angeles, California.

17

18

[  ]     ELECTRONIC MAIL:  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

19

20

[  ]     FAX (BY AGREEMENT ONLY):  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

21

[X]     (Federal) I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.  I declare under penalty of perjury that the foregoing is true and correct.

22

23

Date:   November 1, 2007                    /s/ John B. Bulgozdy
                                            John B. Bulgozdy

24

25

26

27

28

**SEC v. HARRY H. YIM**
**United States District Court - Southern District of California**
**Case No. 07-CV-02065 IEG (AJx)**


**SERVICE LIST**


David W. Wiechert, Esq.
107 Avenida Miramar
Suite A
San Clemente, CA 92672
Fascimile:  (949) 496-6753
Attorney for Defendant Harry H. Yim